UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- X
DANIEL AHEARN,

                                CV:

               Plaintiff,

        -against-                   **COMPLAINT**

BROOKHAVEN SCIENCE ASSOCIATES,
LLC, as Manager and Operator of
Brookhaven National Laboratory,          **JURY TRIAL DEMANDED**

               Defendant.
---------------------------------------------------------- X

        Plaintiff, DANIEL AHEARN, by his attorneys SCOTT MICHAEL MISHKIN P.C., complaining of the Defendant, alleges as follows:

## PRELIMINARY STATEMENT

        This case is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, ("Title VII") for Brookhaven Science Associates, LLC's ("BSA" and/or "Defendant") (1) discrimination against plaintiff Daniel Ahearn ("Plaintiff") on the basis of his race/ethnicity; and (2) retaliation against plaintiff for engaging in protected activity.

## JURISDICTION

        FIRST:       The jurisdiction of the Court over this controversy is based upon 28 U.S.C. § 1331, as this matter is raised under 42 U.S.C. §§ 2000e *et seq.*

        SECOND:       Plaintiff filed a charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") on June 13, 2018, within One Hundred and Eighty (180) days (December 15, 2017) of the discriminatory and retaliatory acts alleged herein.

        THIRD:       Plaintiff filed the instant action within Ninety (90) days of his receipt of notice of right to sue (September 21, 2018) from the EEOC.

FOURTH: This Court therefore has jurisdiction over this matter.

## VENUE

FIFTH: The unlawful practices alleged below were committed within the State of New York, County of Suffolk.

SIXTH: At the time of the unlawful practices, plaintiff was a resident of Suffolk County in the Eastern District of the United States District Court of New York.

SEVENTH: The locations at which the causes of action herein arose are in the County of Suffolk in the Eastern District of the United States District Court of New York.

EIGHTH: Defendant's principal place of business, and the location at which plaintiff was employed, is the Brookhaven National Laboratory ("BNL" and/or "the Lab"), a national laboratory overseen and funded by the U.S. Department of Energy, located in the County of Suffolk, State of New York.

NINTH: This Court is hereby the proper venue under 28 U.S.C. § 1391 (b).

## PARTIES

TENTH: Plaintiff is an "employee" as defined by Title VII.

ELEVENTH: At all times relevant to this action, defendant was the plaintiff's "employer" as defined by Title VII.

TWELFTH: During all times relevant to this action, plaintiff was a member of a protected class in that he is of Hispanic ethnicity and descent.

THIRTEENTH: During all times relevant to this action, defendant was aware of plaintiff's Hispanic ethnicity as plaintiff shared his ethnicity with others at work and often helped Spanish speaking employees by speaking to them in Spanish.

## FACTS

FOURTEENTH: BSA operates the Brookhaven National Laboratory ("BNL" and/or "the Lab") and employs over three thousand (3,000) individuals at the Lab.

FIFTEENTH: Plaintiff, a Hispanic male, was employed by the Lab for approximately twenty-four (24) years as an Electrical Inspector Supervisor and Lock Out Tag Out ("LOTO") Instructor (for locking out hazardous energy), and also worked nine (9) additional years as a Contractor Electrician at the Lab. Plaintiff's duties included, but were not limited to, the installation of electrical systems and the inspection of electrician's installations for code compliance on small and large-scale projects at the Lab.

SIXTEENTH: Additionally, as a LOTO Instructor, plaintiff's responsibilities were to train contractors and employees in the Lab's LOTO procedure.

SEVENTEENTH: In or about July 2017, plaintiff and another Hispanic employee, Eugene Santiago (Chief Electrical Inspector) held a special class to train Hispanic speaking employees in LOTO procedure.

EIGHTEENTH: There were no other courses offered at the Lab to instruct Hispanic speaking employees on how to perform the Lab's LOTO procedures.

NINETEENTH: Shortly after teaching the class, plaintiff and Eugene Santiago were directed to meet with Richard Biscardi, LOTO Subject Matter Expert SME, who scolded both plaintiff and Mr. Santiago for training the Hispanic employees.

TWENTIETH: Specifically, Mr. Biscardi told plaintiff and Eugene Santiago that they were prohibited from training Spanish speaking employees on the LOTO procedure and that it was wrong to be training them.

TWENTY-FIRST: Plaintiff explained that the Hispanic employees also needed to

3

learn the LOTO procedures to prevent getting electrocuted, and expressed his belief that Mr. Biscardi was being prejudiced towards Hispanic employees.

TWENTY-SECOND:   Plaintiff also explained to Mr. Biscardi that he was offended by what Mr. Biscardi was saying because he himself was Hispanic and believed Mr. Biscardi was being discriminatory towards Hispanics.

TWENTY-THIRD:  Mr. Biscardi responded that employees who cannot speak English should not be performing LOTO procedure.

TWENTY-FOURTH:   Shortly after the meeting, plaintiff learned that Mr. Biscardi had contacted managers and other employees of the to complain that plaintiff and Eugene were training Hispanic employees in the LOTO procedure.

TWENTY-FIFTH:  Within a couple days of the meeting, plaintiff went to Human Resources and complained to Shirley Kendall that he believed Mr. Biscardi was discriminating against him and other Hispanic employees.

TWENTY-SIXTH:  On or about July 24, 2017, a posting opened for the LOTO Energy Control Specialist position and plaintiff and Eric Johannson, a Caucasian male, both applied for the position.

TWENTY-SEVENTH:   Plaintiff was more qualified for the position than Eric Johannson, as he had more experience with electrical work, and the position was geared towards someone with electrical experience.

TWENTY-EIGHTH:   Shortly after interviewing with Rich Biscardi and others, plaintiff learned that Richard Biscardi told others on the interview panel that plaintiff should not get the position because he "cut corners," even after a woman on the interviewing team agreed

4

with plaintiff during the interview that it would be dangerous to have someone without electrical experience in the position.

TWENTY-NINTH: After learning about Mr. Biscardi's comments, plaintiff again went to HR and complained to Shirley Kendall that he believed he was being discriminated against because he is Hispanic, and that he believed it would be retaliation if he did not get the position he applied for.

THIRTIETH: Following plaintiff's second complaint to HR, the retaliation intensified and plaintiff began to be ignored on emails, had false accusations made against him that he was spreading rumors at the Lab and was not doing safety checks before using his Lab vehicle, and was subjected to false claims that he was involved in an electrical safety violation.

THIRTY-FIRST: Plaintiff viewed this as retaliation because in his twenty-four (24) year career at the Lab he had never experienced similar issues or scrutiny in the past.

THIRTY-SECOND: On or about February 5, 2018, plaintiff was invited to attend a meeting in relation to the BNL LOTO Procedure.

THIRTY-THIRD: Present at the meeting were Peggy Caradonna, Eugene Santiago, Rich Biscardi, Eric Johannson, Chris Bruno (Utilities Manager), Tom Nehring (Engineer), Dave Chan (Engineer), Greg Tomasello (Electrical Supervisor), Ginger Blander (Investigator) and Tom Baldwin (General Supervisor).

THIRTY-FOURTH: Approximately one (1) week before the meeting, plaintiff had found that two (2) Lab Electricians had violated the Lab LOTO procedure.

THIRTY-FIFTH: Plaintiff attempted to discuss the violations at the meeting but was quickly shut down by Peggy Caradonna, who would not allow him to speak and yelled at him in the presence of his co-workers.

5

THIRTY-SIXTH: On February 6, 2018, plaintiff met with Tom Daniels, Assistant Lab Director, and again complained that he believed he was being discriminated against because he was Hispanic, and retaliated against for his complaints to HR.

THIRTY-SEVENTH: Shortly after his meeting with Tom Daniels, plaintiff learned that Tom Daniels had excluded him from a trip to Ohio for a LOTO meeting, while the two (2) employees that were sent were both Caucasian and less qualified in LOTO than plaintiff.

THIRTY-EIGHTH: Plaintiff also learned that he did not receive the LOTO Energy Control Specialist position, and that Eric Johannson had received the position despite being less qualified and not having electrical experience.

THIRTY-NINTH: Despite plaintiff's complaints to Tom Daniels, Richard Biscardi also continued to prohibit plaintiff from teaching Spanish speaking employees in LOTO procedures and ignore plaintiff's requests to train Hispanic employees.

FORTIETH: On or about March 5, 2018, plaintiff met with HR about an investigation of gender bias brought by Ted Selmer against Peggy Caradonna.

FORTY-FIRST: During that meeting, plaintiff again complained about Peggy Caradonna and Rich Biscardi's discrimination and retaliation towards him, and provided HR with documentation to demonstrate the discriminatory and retaliatory environment that he was being subjected to.

FORTY-SECOND: Cynthia Hernandez from HR assured plaintiff that there would not be any retaliation against him for his complaints.

FORTY-THIRD: However, shortly after the meeting, plaintiff was interrogated by Lab security and was wrongfully accused of stealing copper and other Lab property.

FORTY-FOURTH: However, the property that was the subject of the investigation did

6

not belong to the Lab, but rather, belonged to a contractor and was given to plaintiff by the contractor rather than it being discarded.

FORTY-FIFTH: Upon information and belief, plaintiff's co-workers and supervisors had solicited and received items from contractors in the past and were not subjected to interrogation or accusations of misconduct.

FORTY-SIXTH: In direct retaliation for his complaints, plaintiff was then issued a two (2) week suspension without pay and was sent home pending the investigation. When plaintiff asked why he was being suspended, no one at the Lab would tell him what it was for.

FORTY-SEVENTH: On or about May 5, 2018, plaintiff was advised that his employment at the Lab had been terminated despite his exemplary employment record over his twenty-four (24) year career.

## AS AND FOR PLAINTIFF'S CLAIMS OF
## DISCRIMINATION ARISING UNDER TITLE VII

FORTY-EIGHTH: Plaintiff repeats and realleges each and every allegation contained in Paragraphs FIRST through FORTY-SEVENTH.

FORTY-NINTH: During all times relevant to this action, plaintiff was a member of a protected class in that he is of Hispanic ethnicity and descent.

FIFTIETH: During all times relevant to this action, defendant was aware of plaintiff's Hispanic ethnicity as plaintiff shared his ethnicity with others at work, often helped Spanish speaking employees while working at the Lab, and helped train Spanish speaking employees in LOTO procedure.

FIFTY-FIRST: Likewise, plaintiff complained on numerous occasions at the Lab that he believed he was being discriminated against because he is Hispanic.

FIFTY-SECOND: Defendant willfully discriminated against plaintiff based

7

upon his race/ethnicity in violation of Title VII, as described herein, in that plaintiff was told that he was prohibited from training Hispanic employees, that Hispanic employees should not be learning the LOTO procedures, and that Hispanic employees should not be working in LOTO, and he was also spoken down to by supervisors, excluded from important meetings, and passed over for a promotion that was given to a less qualified Caucasian male.

FIFTY-THIRD:   Defendant's adverse employment actions against plaintiff give rise to an inference of discrimination based upon plaintiff's race/ethnicity as plaintiff's similarly situated non-Hispanic co-workers were not subjected to the same or similar adverse acts or treatment.

FIFTY-FOURTH:   As a result of defendant's disparate treatment towards plaintiff, plaintiff has suffered both financial and emotional harm as described herein.

## AS AND FOR PLAINTIFF'S CLAIMS OF RETALIATION ARISING UNDER TITLE VII

FIFTY-FIFTH:   Plaintiff repeats and realleges each and every allegation contained in Paragraphs FIRST through FIFTY-FOURTH.

FIFTY-SIXTH:   Plaintiff engaged in good faith protected activity under Title VII in that he complained to the Lab on at least four separate occasions that he believed he was being discriminated against because he is Hispanic and that he was being retaliated against for his complaints.

FIFTY-SEVENTH: Defendant had full knowledge of plaintiff's protected activity, as his complaints were made directly to HR and the Assistant Lab Director.

FIFTY-EIGHTH:   As a result of plaintiff's participation in good faith protected activity, defendant took retaliatory adverse actions against plaintiff including, but not limited to, excluding plaintiff from meetings, making false accusations against plaintiff,

subjecting plaintiff to interrogation, suspending plaintiff for two (2) weeks without pay, and ultimately terminating plaintiff's employment without justification.

FIFTY-NINTH: The close temporal proximity between plaintiff's protected activity and the materially adverse actions that he was subjected to gives rise to an inference that plaintiff's complaints were the cause of the adverse actions taken by defendants.

SIXTIETH: The reasons provided by defendant for the adverse action of termination, i.e., that plaintiff stole property, failed to provide his cell phone record during an investigation, and spoke to a contractor following the investigation, all amount to pretext.

SIXTY-FIRST: Specifically, plaintiff never stole any property, but rather, was given small items from a contractor, such as screws, for the purpose of hanging equipment on a safety board to train people in his office, as well as other small items that a Contractor was discarding as garbage. Furthermore, other employees, including plaintiff's supervisor, had been given items from Lab contractors in the past, and those individuals were not subject to any disciplinary action and/or termination as a result.

SIXTY-SECOND: Additionally, as to the other grounds for plaintiff's termination, plaintiff provided defendant with every cell phone password he had ever used while employed at the Lab for purposes of the investigation, and to the best of his knowledge, was never told that he was prohibited from speaking to any contractors following his interrogation.

SIXTY-THIRD: As a result of defendant's retaliatory adverse actions against plaintiff, plaintiff has suffered both financial and emotional harm as described herein.

**WHEREFORE,** Plaintiff demands judgment against Defendant as follows:

1. For a money judgment against defendant representing actual damages for discrimination based on plaintiff's race and ethnicity in violation of Title VII;

9

2. For a money judgment against defendant representing compensatory damages for discrimination based on plaintiff's race and ethnicity in violation of Title VII;

3. For a money judgment against defendant representing emotional damages for discrimination based on plaintiff's race and ethnicity in violation of Title VII;

4. For a money judgment against defendant representing punitive damages for discrimination based on plaintiff's race and ethnicity in violation of Title VII;

5. For a money judgment against defendant representing actual damages for retaliation in violation of Title VII;

6. For a money judgment against defendant representing compensatory damages for retaliation in violation of Title VII;

7. For a money judgment against defendant representing emotional damages for retaliation in violation of Title VII;

8. For a money judgment against defendant representing punitive damages for retaliation in violation of Title VII;

9. For equitable relief;

10. For reasonable attorney's fees and costs;

11. For such other further relief as the Court may deem just and proper.

## JURY DEMAND

**Plaintiff hereby demands a trial by jury of all issues in this action.**

Dated: Islandia, New York
December 11, 2018

**SCOTT MICHAEL MISHKIN, P.C.**

By: /s/ Scott Michael Mishkin
Scott Michael Mishkin, Esq.
One Suffolk Square, Suite 240
Islandia, New York 11749
Telephone: 631-234-1154
*Attorneys for Plaintiff*